# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE: MICHAEL LESHAWN BANKS
Bankruptcy Case No. 6:08-Bk-7885-ABB
Adversary No. 6:08-Ap-00230-ABB

PATINA, INC.,

        Appellant,

-vs-                                            Case No. 6:10-cv-81-Orl-31

MICHAEL LESHAWN BANKS,

        Appellee.

## ORDER

The Appellant, Patina, Inc. ("Patina"), appeals an order of the Bankruptcy Court (Doc. 1-1) partially sustaining an objection to its claim filed by the Debtor, Michael LeShawn Banks ("Banks"), and denying its objections to his discharge.

## I.    Background[1]

Banks is a successful artist, originally from Alabama. He typically sells his work via consignment or through outright sales to individuals or galleries. In the case of a consignment, he typically sets the price at which his work is to sell and, when the sale occurs, the proceeds are split 50-50 with the gallery. Banks had dealings with two Alabama art galleries that are relevant to the instant case: Patina, which is owned by Nancy Fleming ("Fleming"), and Marcia Weber Art Objects, Inc., owned by Marcia Weber ("Weber").

---

[1] Except where noted, the facts set forth in this section are undisputed.

Banks has struggled with alcohol and drug addictions for more than a decade. The Bankruptcy Court found, and the parties do not dispute, that Banks's addictions, among other things, cost him his marriage to Jennifer Banks and resulted in him spending stretches of time living on the street. At the time of the trial below, he was in the midst of a year-long rehabilitation program.

Banks filed the instant Chapter 7 case on September 4, 2008. Patina filed an adversary complaint, seeking to have Banks's discharge denied for, among other things, allegedly hiding assets, making false statements, and destroying or failing to keep financial records. Patina also filed a proof of claim against Banks's estate in the amount of $119,210.80, representing two sums: a $13,435.80 judgment resulting from a state court suit, and lost commissions of $105,775 due to Banks's breach of a contract to supply paintings to the gallery. In addition, Patina complained that venue was improper in this district and sought disqualification of one of Banks's attorneys, Howard Marks ("Marks").

In August 2009, the Bankruptcy Court conducted a two-day trial at which Banks, Fleming, his ex-wife, and the Chapter 7 Trustee, among others, testified. On December 17, 2009, the Bankruptcy Court entered its Memorandum Opinion and Judgment (Doc. 1-4). The Bankruptcy Court found the testimony of Banks and his ex-wife to be credible, and specifically found that Fleming's testimony was not credible. (Doc. 1-4 at 12). The Bankruptcy Court ruled that venue was proper in this district, disallowed Patina's claim for lost commissions, and found that Banks was entitled to a discharge. This appeal followed.

## II. Legal Standards

### A. Standard of Review

In an appeal of a decision of the Bankruptcy Court, this Court sits as an appellate court. When reviewing the Bankruptcy Court's findings of fact, this Court applies the clearly erroneous standard. *In re Williamson*, 15 F.3d 1037, 1038 (11th Cir.1994). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on review of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lightner v. Lohn*, 274 B.R. 545, 548 (M.D.Fla.2002). The burden of showing clear error falls on the party seeking to overturn the Bankruptcy Court's findings. *In re Caribbean K Line, Ltd.*, 288 B.R. 908, 911 (S.D.Fla.2002).

This Court reviews the Bankruptcy Court's conclusions of law under a de novo standard. *Williamson*, 15 F.3d at 1038. Under de novo review, this Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir.2001).

## III. Analysis

### A. Venue

Patina objected to Banks's filing his petition for relief in the Middle District of Florida, arguing that the case should have been filed in Alabama. Venue for bankruptcy cases is governed by 28 U.S.C. § 1408. That statute provides, with certain exceptions not applicable here, that bankruptcy cases are to be filed in the district where the debtor has resided for the largest portion of the 180 days preceding the filing. The Bankruptcy Court found that Banks had relocated to

Sanford, Florida, within the Middle District, in January 2008, thus it was proper for Banks to file his petition for relief here in September 2008.

Patina contended that Banks had lived in Dothan, Alabama for at least the six months preceding the filing, pointing to the fact that Banks had an Alabama automobile registration, that he had received a traffic ticket in Dothan, Alabama in June 2008, and that he had received an invoice for an emergency room visit to a Dothan hospital in July 2008. Banks pointed to, *inter alia*, his own testimony, which the Bankruptcy Court chose to credit. The Court found that although Banks had traveled to Alabama during the relevant period to visit friends, he had resided in the Middle District for the larger portion of the 180 days before filing his petition.

On appeal, Patina argues that this finding was an error, but in support offers nothing other than a recitation of the evidence supporting its position – *i.e.*, the auto registration, the traffic ticket, and the trip to the emergency room. Patina has not demonstrated that the Bankruptcy Court was required to rely on the evidence that favored its position or to ignore the Debtor's testimony. Accordingly, Patina has failed to show that the Bankruptcy Court's factual finding as to the Debtor's residence for the 180 days preceding the filing was a clear error.

B.  Claims objection

In 2006, Jennifer Banks instituted divorce proceedings against the Debtor in Alabama state court. In January 2007, the parties entered into a settlement agreement, pursuant to which Jennifer Banks was appointed to be the Debtor's agent in regard to his art and his financial affairs. The agreement provided in pertinent part as follows:

> Defendant, Michael LeShawn Banks, hereby appoints plaintiff as his exclusive agent to handle all financial matters in relation to defendant's artwork, including but not limited to the arrangement of art shows displaying defendant's artwork, the

> arrangement of private sales of defendant's artwork and the receipt of all revenue derived from the sale of defendant's artwork. Defendant agrees that he shall not be authorized to receive any income from the sale of his artwork for a period of one year and that all sums shall be paid directly to plaintiff for management and investment.

The Alabama court incorporated the agreement into the June 6, 2007 judgment in the divorce case. A copy of the judgment was served on Patina. Although it is not clear from the record whether Patina was actually made a party to the divorce case, Patina was named as a party in the case captions of both the agreement and the judgment.

In May 2007 – after the signing of the settlement agreement, but before the judgment issued – James Wilmoth ("Wilmoth"), a Patina representative, drove to the Debtor's home and drafted the following agreement (henceforth, the "Patina Contract"), which both Banks and Wilmoth signed:

> Michael Banks and Patina Gallery hereby agree that in addition to Patina's exclusivity for Mr. Banks works within a 200 mile radius of Fairhope that Patina will arrange for three additional shows for Mr. Banks within the next year for which Mr. Banks will supply 30+ paintings and at least 6 large (= 4' x 4') for each show. Patina will notify Michael at least 30 days in advance and shall work with Mr. Banks to avoid conflicts with other shows already previously booked. Mr. Banks and Patina agree to keep communications open and to stay in touch regularly.

Jennifer Banks did not sign the Patina Contract.

So far as the record discloses, Banks did not provide any paintings or attend any shows pursuant to the Patina Contract. Patina filed an unsecured claim of $105,775, representing the profits it allegedly lost as a result of Banks's breach.[2] The Bankruptcy Court disallowed the claim, finding *inter alia* that the expected profits were too speculative to permit recovery, and that,

---

[2] Patina also filed an unsecured claim in the amount of $13,435.80, reflecting a judgment against Banks in separate state court litigation. Banks did not object to that claim.

because of the agreement in the divorce case, the Patina Contract was not enforceable in the absence of Jennifer Banks's signature.

On appeal, Patina argues that the Bankruptcy Court made a legal error by interpreting the agreement from the divorce proceedings as establishing Jennifer Banks as the only party authorized to enter into a contract on behalf of the Debtor with regard to his art. According to Patina, Jennifer Banks was appointed as *an* agent for the Debtor, but he retained the authority, as a principal, to enter into contracts on his own behalf. Patina, however, ignores the plain language of the agreement in the divorce case, which appointed Jennifer Banks as the *exclusive* agent to handle *all* financial matters in relation to Banks's artwork, "including but not limited to the arrangement of art shows displaying defendant's artwork [and] the arrangement of private sales of defendant's artwork." Moreover, pursuant to the agreement, the Debtor completely ceded the right to the proceeds from his art to Jennifer Banks. Such a complete transfer of the right to profit from one's work is not suggestive of a mere principal-agent relationship. The Bankruptcy Court did not clearly err in concluding that the Patina Contract was unenforceable because Jennifer Banks had not signed it.[3]

In addition, Patina has not challenged the Bankruptcy Court's finding that Patina's evidence of lost profits was complete speculation. As a result, regardless of whether Jennifer Banks was a necessary party to the Patina Contract, Patina cannot show that the Bankruptcy Court's disallowance of its lost profits claim was clearly erroneous.

---

[3]Patina also argues that the Debtor should be equitably estopped from taking the position that Jennifer Banks was a necessary party to its agreement with the Debtor. However, Patina cannot identify any detriment it suffered by relying on Banks's failure to reveal his inability to contract on his own behalf.

C.  Discharge

Patina objected to Banks's discharge under several different subsections, each of which is addressed in turn below.

**11 U.S.C. § 727(a)(2)(A)**

This subsection provides in pertinent part that the court shall deny a discharge if the debtor, "with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year of the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). Patina alleged that Banks transferred 88 paintings to Weber between March and May 2008 to keep them away from Patina. Patina further alleged that Banks received inadequate consideration for a sale of the 88 paintings, thereby showing that the transfers were consignments, rather than outright sales, and that Banks was required to disclose the transfers on his bankruptcy schedules (henceforth, "Schedules") and statement of financial affairs (henceforth, "SOFA"), which he failed to do.

Banks and Weber agreed that the transfers occurred, but testified that they were done in the normal course of business and that the paintings were sold, not placed on consignment. The Bankruptcy Court chose to credit the testimony of Banks and Weber, finding that the 88 paintings were transferred in the ordinary course of business, that Banks had not retained any ownership interest after the transfer, and accordingly Banks was not required to list the paintings on the Schedules or SOFA.

On appeal, Patina simply reiterates its arguments about the allegedly inadequate consideration and illicit intent behind the transfers. Patina does not point to any other evidence

compelling a conclusion that the transfers were outside the ordinary course of business or done with an intent to hinder creditors. Patina has failed to show that the Bankruptcy Court's findings on this point were clearly erroneous.

### 11 U.S.C. § 727(a)(3)

This section provides, in pertinent part, that the court shall deny a discharge if the debtor

> has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). To prevail under this section, a plaintiff must establish that the debtor either failed to preserve recorded information, or that he destroyed or concealed it, and that as a result the debtor's financial condition cannot be ascertained. *In re Floyd*, 322 B.R. 205, 212-13 (Bankr.M.D.Fla. 2005).

Patina complained that, despite requests, Banks failed to produce any business records except for a couple of old tax returns. The Bankruptcy Court credited Banks's testimony that he had been seriously impaired by his addictions and had not maintained financial records. Accordingly, the Bankruptcy Court determined that Banks had not violated Section 727(a)(3). On appeal, Patina presents only the most perfunctory of arguments that the Bankruptcy Court's finding was an error. Patina has again failed to meet its burden of showing clear error.

### 11 U.S.C. § 727(a)(4)

Section 727(a)(4) of the Bankruptcy Code provides, in pertinent part, that the Court shall deny a discharge where the debtor knowing and fraudulently made a false oath or account. Patina provided a long list of alleged misrepresentations by Banks under oath:

1. Banks listed a single bank account, with no account number, in his Schedules, but there was testimony as to more than one such account at the Section 341 meeting of creditors.

2. Banks testified at the Section 341 meeting that he gave a bill of sale to Weber for approximately 60 paintings shortly before he filed his petition, but answered "none" in the SOFA as to transfers within one year of filing.

3. He testified that he walked everywhere and did not own a car.

4. Banks testified that he received his mail at the offices of Marks, his attorney, in Florida, and that he lived in apartment in Sanford provided by Marks under an oral lease, and that he had lived in Sanford continuously for the 180 days preceding the filing.

5. He testified that he had not paid certain expenses listed on Schedule B.

6. Banks failed to disclose the 88 paintings transferred to Weber, as discussed above.

7. He allegedly misrepresented his income for 2007 and 2008 on his SOFA.

8. He received certain paintings from Weber in December 2007, and concealed them, and he had other paintings on consignment with Weber and had failed to list the future income he expected from those paintings on Schedule B.

After listening to testimony from, among others, Banks, his ex-wife, and the Chapter 7 Trustee, the Bankruptcy Court found that Banks had not made any false oaths in relation to the case. The court gave significant weight to the testimony of the Chapter 7 Trustee, who testified that Banks had cooperated to the best of his ability, and that there were no plans to file any proceedings against him. The Bankruptcy Court found that Banks had made some mistakes in

filling out his Schedules and SOFA, such as initially failing to list a 1993 Volvo that he owned but did not drive, or failing to list the lease agreement with Marks as an executory contract. However, those mistakes were the product of his addictions, his lack of financial records, or the fact that his ex-wife had been handling his finances for several years preceding the filing, and they were quickly corrected. In addition, several of the so-called "false oaths," such as the alleged failure to list the transfers to Weber, or the false representation as to his residence, were not false at all, as discussed above. As was the case with the other objections to discharge, Patina has failed to show that the Bankruptcy Court was, for any reason, obligated to credit its version of the facts over Banks's version. Accordingly, Patina has failed to show that the Bankruptcy Court clearly erred by overruling this objection to discharge.

  D. Disqualification of Howard Marks

Patina contends that one of the Debtor's attorneys, Howard Marks, should have been disqualified because he had a personal relationship with the Debtor, including serving as his landlord and providing him with money, and testified as a fact witness in the proceedings below. Florida Rule of Professional Conduct 4-3.7 provides that

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of the client except where:
>
> (1) the testimony relates to an uncontested issue;
> (2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
> (3) the testimony relates to the nature and value of legal services rendered in the case; or
> (4) disqualification of the lawyer would work substantial hardship on the client.

The rule prohibits such representation because combining the roles of advocate and witness might improperly bolster the lawyer's testimony, thereby prejudicing the opposing party, or because the

lawyer's testimony might differ from that of the client, causing a conflict. *See AlliedSignal Recovery Trust v. AlliedSignal, Inc.*, 934 So. 2d 675, 678 (Fla. 2d DCA 2006). However, Rule 4-3.7 only prevents representation where "the lawyer is likely to be a necessary witness on behalf of the client." Patina has not described Marks's testimony or made any other effort to show that Marks was a "necessary" witness or that he testified on behalf of Banks – which, given that Patina, not Banks, called him to the stand, seems unlikely. Accordingly, Patina has not shown that the Bankruptcy Court erred by failing to disqualify Marks.[4]

Patina raises additional arguments on this and other issues, but the Court finds that they do not merit discussion.

---

[4]On this, and the other issues raised by Patina in its briefs, any additional arguments not explicitly referenced here have been considered and rejected.

**IV. Conclusion**

Patina has failed to show that the Bankruptcy Court erred in finding that venue was proper in this district, in disallowing its lost profits claim, in overruling its objections to the Debtor's discharge, or in failing to disqualify one of his attorneys. In consideration of the foregoing, it is hereby

**ORDERED** that the Bankruptcy Court's Memorandum Opinion and Judgment of December 17, 2009 is **AFFIRMED**. The Clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 1, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party